UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN JON HARPER,                          Case No. 15-13971

            Plaintiff,              Gershwin A. Drain
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 13)**

## I.  PROCEDURAL HISTORY

    A.  <u>Proceedings in this Court</u>

On November 11, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District Judge Gerald E. Rosen referred this matter to Magistrate Judge Michael J. Hluchaniuk for the purpose of reviewing the Commissioner's decision denying plaintiff's claims. (Dkt. 3).  On January 5, 2016, the case was reassigned to the undersigned pursuant to Administrative Order.  (*See* Text-Only Order entered January 5, 2016).  On March 15, 2016, plaintiff filed his motion for summary judgment.  (Dkt. 10).  On June 13, 2016, the Commissioner filed its motion for summary judgment.  (Dkt.

13).  On December 27, 2016, the matter was reassigned by Text-Only Order to District Judge Gershwin A. Drain.  (*See* Text-Only Order entered December 27, 2016).  The matter is now ready for report and recommendation.

      B.    Administrative Proceedings

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on February 6, 2012, alleging a disability beginning October 4, 2011.  (Dkt. 7-5, Pg ID 230-231).  The Commissioner initially denied plaintiff's application on June 22, 2012.  (Dkt. 7-3, Pg ID 124-137).  Thereafter, plaintiff requested an administrative hearing, and on April 30, 2014, he appeared with counsel before Administrative Law Judge ("ALJ") Melissa Warner, who considered his case *de novo*.  (Dkt. 7-2, Pg ID 75-121).  In a July 3, 2014 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.  (Dkt. 7-2, Pg ID 53-70).  Plaintiff requested a review of the decision, and the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council on September

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

      Though plaintiff submitted additional evidence to the Appeals Council, the Council noted

17, 2015, denied plaintiff's request for review.  (Dkt. 7-2, Pg ID 33-39); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).  Plaintiff filed this suit on November 11, 2015.  (Dkt. 1).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further proceedings consistent with this Report and Recommendation under Sentence Four.

## II.    FACTUAL BACKGROUND

Plaintiff was 37 years old on the alleged disability onset date and was 40 years old at the time of his administrative hearing.  (Dkt. 7-2, Pg ID 68).  He had previously worked as an automotive assembler, fast food/industrial cleaner, industrial cleaner, and as a forklift driver.  (*Id.*)  Plaintiff alleges that a host of physical and mental limitations prevent him from maintaining full-time competitive work.

### A.    ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff engaged in substantial gainful activity from

---

that the evidence "from Oakwood Hospital dated February 3, 2014 to May 19, 2014" was "not new because it is an exact copy of Exhibit 18F."  (Dkt. 7-2, Pg ID 34).

October 2013 through April 2014.  (Dkt. 7-2, Pg ID 55).  However, the ALJ added

that there had been a continuous 12-month period(s) during which plaintiff had not

engaged in substantial gainful activity.  The ALJ's remaining findings, therefore,

addressed the period(s) the plaintiff had not engaged in substantial gainful

activity.  (Dkt. 7-2, Pg ID 55).  At step two, the ALJ found that plaintiff had the

following severe impairments:  C6-7 herniation with cord compression and

radiculopathy, status post discectomy and C5-7 fusion; multilevel lumbar

degenerative disc disease/degenerative joint disease without stenosis or neural

foraminal narrowing; and, major depressive disorder.  (*Id*.)  At step three, the ALJ

found that plaintiff did not have an impairment or combination of impairments that

met or equaled one of the listings in the regulations.  (*Id*. at 56).

    The ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform:

> sedentary work as defined in 20 CFR 404.1567(a)
> except: sit, stand, or walk for 30 minutes at a time, but sit
> for a total of six of eight hours in a workday, and stand
> or walk for a total of two hours in a workday; use of a
> cane to walk more than ten feet beyond the work station;
> no pushing or pulling of leavers or operating foot
> controls; occasional climbing of stairs; no balancing on
> one lower extremity at a time; occasional stooping
> greater than 90 degrees; no crawling; frequent handling
> and fingering; frequent exposure to respiratory irritants;
> occasional exposure to temperature extremes; no
> exposure to obvious hazards, including vibrations; and
> no holding of the neck in one fixed position or

> vocational requirement to turn the neck to the ends of range of motion, but the claimant can turn his body to accommodate. The claimant can also: understand, carry out, and remember simple instructions where the pace of productivity is not dictated by an external source over which the claimant has no control, such as an assembly line or conveyor belt; make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting; and, respond appropriately to supervision, the general public, and coworkers.

(Dkt. 7-2, Pg ID at 59). At step four, the ALJ determined that plaintiff was not capable of performing any past relevant work. (Dkt 7-2, Pg ID 68). At step five, the ALJ concluded that based on plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, and that plaintiff has not been under a disability from October 4, 2011, through the date of the decision. (Dkt. 7-2, Pg ID 69-70).

   B.   Plaintiff's Claims of Error

   Plaintiff raises several claims of error. First, plaintiff says that the ALJ erred when she did not obtain an updated physical medical consultative examination or the opinion of a medical advisor as required by SSR 96-6p given the complexity of plaintiff's limitations. (Dkt. 10, Pg ID 991). Prior to the hearing, plaintiff's most recent consultative examination was conducted on June 7, 2012. Since that time, plaintiff says that over 288 pages of new medical reports were added to the record that indicate additional limitations and provide further

evidence of his disabilities.  (Dkt. 7-10; Pg ID 889-890, 904-905).  As such, plaintiff claims that a large portion of medical evidence supporting the severity of his limitations was not available when his consultative examination took place on June 7, 2012.  For this reason, plaintiff requests that the case be remanded and the ALJ instructed to obtain an updated medical opinion so that an appropriate review of the medical record is performed.

Plaintiff also argues that there is no support for the ALJ's physical RFC assessment as the record does not contain an RFC assessment from any physician.  (Dkt. 10, Pg ID 993).  Here, the ALJ acknowledged that the consultative examiner, Dr. Khalid's, opinion failed to offer a function-by-function analysis or an opinion of plaintiff's RFC.  Nevertheless, instead of ordering a consultative examination that would provide a function-by-function analysis of plaintiff's capabilities and include plaintiff's RFC, the ALJ simply offered her own interpretation of plaintiff's physical RFC based on the medical documentation she reviewed.  Plaintiff claims that this is reversible error.

On a related note, plaintiff asserts that the ALJ erred in failing to include a function-by-function assessment in compliance with SSR 96-8p.  (Dkt. 10, Pg ID 995).  In rendering her decision, plaintiff argues that the ALJ failed to separately consider each of his functions, including: sitting, standing, walking, lifting, carrying, pushing, and pulling when determining his RFC.  Rather, according to

6

plaintiff, the ALJ made conclusory statements indicating that she had taken into account plaintiff's medical conditions in determining plaintiff's ability to perform certain activities.  However, SSR 96-8p requires for each function to be considered separately in order to make plain what evidence the ALJ specifically relied on in determining plaintiff's RFC.  Because the ALJ failed to do this, a remand is necessary.

In addition to his physical RFC, plaintiff also argues that the ALJ did not properly assess his mental RFC as required by SSR 96-8p and SSR 85-15.  (Dkt. 10, Pg ID 997).  Plaintiff's specific arguments on this point are that the ALJ found that plaintiff has a severe mental impairment of major depressive disorder; however, the RFC assessment does not consider the impact of this disorder on his functional ability as required by SSR 96-8p.  Furthermore, the ALJ's conclusory statements regarding plaintiff's mental RFC do not describe what evidence the ALJ relied on in determining plaintiff's ability to, for example, understand, carry-out and remember instructions, use judgment in making work-related decisions, respond appropriately to supervision, co-workers and work situations, and deal with changes in a routine work setting.  (Tr. 7-2, Pg ID 59).  This is particularly troubling given that the ALJ only gave limited weight to the June 14, 2012 opinion of independent consultative psychologist Dr. Oliver-Brannon.  Plaintiff indicates that the ALJ failed to specifically discuss the impact of plaintiff's major

depressive disorder on his ability to perform mental functions as required by SSR 96-8p and SSR 85-15.

Finally, plaintiff argues that the ALJ violated SSR 96-8p by failing to consider the effect of his non-severe impairments including: superior labral tear, asthma, left hand carpal tunnel syndrome, and diabetes mellitus with possible peripheral neuropathy on his ability to work. (Dkt. 10, Pg ID 1000). Plaintiff contends that SSR 96-8p requires an ALJ to consider both severe and non-severe impairments on a claimant's ability to work. "Where an ALJ determines that non-severe impairments do not result in any work-related restrictions or limitations, the ALJ 'is required to state the basis for such conclusion.'" *Id.* (quoting *Hicks v. Comm'r of Soc. Sec.*, No. 12-13581, 2013 WL 3778947, at *3 (E.D. Mich. July 18, 2013)). Here, the RFC does not address how plaintiff's non-severe medical conditions would affect his physical RFC. For example, in regards to plaintiff's asthma, the ALJ determined that plaintiff can have frequent exposure to respiratory irritants and occasional exposure to temperature extremes. (Dkt. 7-2. Pg ID 59). Also, with respect to plaintiff's superior labral tear and left hand carpal tunnel syndrome, the ALJ only limited plaintiff's exposure to vibrations. Plaintiff also argues that the ALJ completely failed to address the impact of his conditions on his ability to reach overhead or lift in general. These conditions would also impact his ability to carry, push and pull. Furthermore, the ALJ found

plaintiff capable of performing frequent handling and fingering.  Clearly, an

individual suffering from a carpal tunnel syndrome would be incapable of

performing frequent fingering and handling with the affected limb.  Lastly, the

ALJ does not address plaintiff's ability to stand in relationship to his diabetes

mellitus with possible peripheral neuropathy. Plaintiff argues that such a condition

could place limitations on his ability to stand.  For all of these reasons, plaintiff

argues that the matter should be remanded pursuant to SSR 96-8p for a proper

evaluation of plaintiff's non-severe medical conditions and how they would affect

his physical RFC.

      C.    <u>The Commissioner's Motion for Summary Judgment</u>

      The Commissioner first argues that SSR 96-6p did not require the ALJ to

obtain an updated medical opinion on the issue of equivalency.  (Dkt. 13, Pg ID

1021).  An updated opinion on the matter of equivalence is required when, "in the

opinion of the [ALJ] or the Appeals Council": 1) no additional medical evidence is

received, but a judgment of equivalence may be reasonable; or 2) additional

medical evidence is received that may change a State agency consultant's earlier

finding of no equivalence.  SSR 96-6p, 1996 WL 374180, at *3-4.  The

Commissioner contends that plaintiff has not met his burden in showing that the

ALJ erred because he did now show that: 1) the evidence satisfied a particular

Listing; or 2) the ALJ herself believed that the new evidence may have changed

the original equivalency determination.

The Commissioner specifically counters plaintiff's argument by indicating that plaintiff does not identify any particular Listings that the ALJ should have considered for equivalency, nor has he explained how the ALJ's actual Listings analysis was deficient in any way.  Moreover, of the more than 288 pages that plaintiff argues indicate additional problems, plaintiff only identifies four to support his argument.  (Pl's Br. at 8-9) (citing Tr. 889-890, 904-905).  None of these records, however, suggest that plaintiff's condition might implicate the criteria of any particular Listing, or any specific functional limitation. Furthermore, these records reveal a negative review of systems and normal physical examinations, making it difficult to see how they would support a finding of equivalency for any particular Listing.  Additionally, the records postdate October 2013, when plaintiff began to engage in substantial gainful activity (Tr. 23).  Plaintiff has not challenged the ALJ's finding that he was in fact engaged in substantial gainful activity during this period which, according to the Commissioner, renders any medical evidence dated after October 2013 of limited probative value in determining whether plaintiff's impairments met the criteria of a Listing during the period preceding that point.

The Commissioner says that plaintiff frames the time in which additional evidence was submitted as falling after Dr. Qureshi's consultative exam on June 7,

2012, yet Dr. Khalid's assessment of June 13, 2012 is more relevant on this point, since he reviewed Dr. Qureshi's examination and found that plaintiff's physical impairments did not medically equal the criteria of any Listings. *See* SSR 96-6p, 1996 WL 374180, at *3 (a medical consultant's signature on the Disability Determination Transmittal form satisfies the ALJ's obligation to receive an expert opinion on equivalence into the record). Contrary to plaintiff's argument, an ALJ can rely on State agency assessments even if those providers did not have access to the entire medical record. *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1002 (6th Cir. 2011) ("There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record. The opinions need only be 'supported by evidence in the case record.'") (quoting SSR 96-6p, 1996 WL 374180, at *2)). While the ALJ discounted some specific functional limitations in Dr. Khalid's opinion based on evidence obtained after he rendered his opinion, that fact did not call into question Dr. Khalid's opinion that plaintiff's impairments did not meet or equal the criteria of any Listing. In other words, the ALJ implicitly found that the later evidence did not undermine Dr. Khalid's assessment to such a degree that an updated opinion on equivalence was necessary. *See Courter*, 479 F. App'x at 723. The Commissioner agues that this was the ALJ's decision to make, not plaintiff's. Therefore, remand is not warranted under SSR 96-6p.

11

The Commissioner also argues that the RFC finding is supported by substantial evidence. (Dkt. 13, Pg ID 1025). First, the Commissioner disagrees with plaintiff's assertion that the record is "devoid" of any physical RFC assessment. For support, the Commissioner points to Dr. Khalid's opinion, wherein he indicated a significantly reduced range of light work, with a limitation to standing or walking for only two hours during an 8-hour workday, as well as postural and environmental limitations. (Tr. 98-99). As noted above, the ALJ only gave limited weight to Dr. Khalid's opinion, discounting his opinion with respect to the ability to lift up to 20 pounds occasionally, and 10 pounds frequently (and by extension, finding a sedentary level of exertion more appropriate than a light level), and the ability to balance. (Tr. 35). The Commissioner indicates that the ALJ added limitations above and beyond Dr. Khalid's opinion, including a limitation to sit, stand, or walk for only 30 minutes at a time; the need to use a cane to walk more than 10 feet beyond the workstation; an inability to push or pull levers or operate foot controls; an inability to balance on one lower extremity at a time; an inability to crawl; a limitation to only frequent handling and fingering; a need to avoid frequent exposure to respiratory irritants and occasional exposure to temperature extremes; and an inability to hold the neck in a fixed position or turn the neck to the ends of range of motion, but with the ability to turn his body to accommodate this limitation (*compare* Dkt. 7-2,

Pg ID 98-99 *with* Pg ID 27).  Therefore, according to the Commissioner, there was a physical RFC opinion, and every departure the ALJ made from Dr. Khalid's opinion was more restrictive, and thus in plaintiff's favor.  The Commissioner agues that where, the ALJ's RFC opinion is in fact more restrictive than any opinion of record, then to the extent the ALJ "offered her own interpretation of" plaintiff's physical RFC, there can be no prejudice to plaintiff from the ALJ's deviation from these opinions. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

The Commissioner also argues that the ALJ's failure to include a function-by-function assessment in the RFC analysis is not error.  Specifically, the ALJ's RFC finding did specify plaintiff's ability to sit, stand, walk, push and pull.  (Dkt. 7-2, Pg ID 27).  While it did not specify plaintiff's ability to lift and carry, the Commissioner argues that those functional limitations are implicit in the ALJ's characterization of plaintiff's exertional level as sedentary, since "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  (*Id.*)  The Commissioner also notes that the Sixth Circuit has held that "[a]lthough a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing." *Delgado v. Comm'r of Soc. Sec.*, 30

13

F. App'x 542, 547-48 (6th Cir. Mar. 4, 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.*, No. 00-1995, 251 F.3d 153 (Table) (3d Cir. Dec. 19, 2000)). Remand on this point is therefore unwarranted.

The Commissioner also contends that the ALJ properly assessed plaintiff's mental RFC. (Dkt. 13, Pg ID 1029). The Commissioner explains that the ALJ discussed Dr. Oliver-Bannon's findings prior to explaining the weight she gave to the opinion. (Dkt. 7-2, Pg ID 33-34). Moreover, plaintiff's argument ignores the fact that the ALJ relied on State agency psychological consultant Dr. Newhouse's opinion, to which plaintiff incorrectly states that the ALJ gave no weight. Instead, the ALJ afforded some weight to this opinion noting that it was generally consistent with treatment notes from plaintiff's various medical providers indicating that plaintiff had mild to moderate limitations in concentration, persistence, or pace due to symptoms of depression, chronic pain, and pseudo-seizure activity. (*Id.* at 35). The ALJ only discounted Dr. Newhouse's opinion that plaintiff had mild difficulties in maintaining social functioning. (*Id.*) In discounting this portion of the opinion, the ALJ relied on plaintiff's own statements that he was able to live with his parents and extended family, shop independently, work as a forklift driver, play cards with family members, and maintain a relationship with his girlfriend. (*Id.* at 26, 35; *citing* Pg ID 230-241). Dr. Newhouse took into account evidence of depression (*Id.* at 95), and found that

plaintiff retained the ability to perform simple tasks on a sustained basis (*Id*. at 97, 101). At the same time, the ALJ found that plaintiff could understand, carry out, and remember simple instructions, elaborating however, with the limitation that this should be in a context in which the pace of productivity is not dictated by an external source over which plaintiff had no control, such as an assembly line or conveyor belt. (*Id*. at 27). The ALJ also found that plaintiff could make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting, as well as respond appropriately to supervision, the general public, and coworkers. (*Id*. at 27). The Commissioner argues that plaintiff's retention of these capabilities is implicit in Dr. Newhouse's opinion, which did not assess limitations in those areas. (Dkt. 7-2, Pg ID 97-101).

The Commissioner's final contention is that plaintiff has not shown that his alleged, non-severe impairments warranted limitations beyond those the ALJ assessed. (Dkt. 13, Pg ID 1033). The Commissioner first says that plaintiff has failed to cite any medical evidence suggesting functional limitations associated with these conditions, let alone functional limitations beyond those in the ALJ's RFC finding. Instead, plaintiff relies on speculation to suggest that these conditions would present additional functional limitations. Such speculation fails to undermine the ALJ's RFC finding requiring a remand here.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

16

decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

18

addressing in his written decision every piece of evidence submitted by a party.")
(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,
198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."
*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);
*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).
There are several benefits programs under the Act, including the Disability
Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the
Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et
seq.*).  Title II benefits are available to qualifying wage earners who become
disabled prior to the expiration of their insured status; Title XVI benefits are
available to poverty stricken adults and children who become disabled.  F. Bloch,
Federal Disability Law and Practice § 1.1 (1984).  While the two programs have
different eligibility requirements, "DIB and SSI are available only for those who
have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).
"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

         1.    *Medical Opinion on Equivalence*

Plaintiff argues that the ALJ erred by not obtaining an updated medical opinion on the medical equivalence of his physical impairments, saying that SSR

21

96-6p mandated such an updated opinion here.  As set forth in *Stratton v. Astrue*, 987 F. Supp. 2d 135, 147 (D.N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight.*

1996 WL 374180, at *3 (emphasis added); *see also Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly

22

playing doctor).  In sum, Social Security Ruling 96-6p requires an ALJ to obtain medical expert testimony on the issue of medical equivalence when, in the ALJ's opinion, "the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence *may be reasonable*." SSR 96-6P, 1996 WL 374180, at *4 (emphasis added).

Here, plaintiff specifically argues that evidence submitted after Dr. Khalid's June 13, 2012 equivalence determination— over 288 pages of new medical reports that he added to the record—reasonably raises the question of whether the ALJ should have sought a new medical opinion on the issue of equivalence.  As plaintiff notes, the new medical records provide further evidence of plaintiff's limitations including low back strain, diabetes mellitus, and hypertension and also indicate additional potential disabilities, or factors that could be considered in an equivalence determination, including insomnia and obstructive sleep apnea.

The Commissioner's argument that plaintiff only cited four pages of the new medical records to support his argument that the ALJ erred is unpersuasive inasmuch as plaintiff is not required to argue every piece of contested evidence in his motion for summary judgment.  Furthermore, and importantly, plaintiff did vigorously argue that over 288 pages of additional medical records were entered into the record after Dr. Khalid's equivalence determination; those records were not considered in making the determination, and they reasonably could have

23

supported a finding of medical equivalence and thereby disability.  While plaintiff

only pointed to a few examples of records that had not been considered (e.g., Dkt.

7-10, Pg ID 929-930, 944-945), the Court does not find that he did so to the

exclusion of the additional records presented.  In fact, upon review of the new

medical records, the Court notes further evidence of plaintiff's disabling

conditions.  For example, on December 31, 2012, plaintiff underwent a cardiac

catheterization to assess his cardiac anatomy.  (Dkt. 7-9, Dkt. 752).  Indications for

the procedure included chest pain, unstable angina, and diabetes.  (*Id*.)  Right and

left angiograms were also performed.  (*Id*.)  It was determined that plaintiff needed

to continue medical therapy and start statins.  (*Id*. at 753).  Later, in September

2013, plaintiff was admonished by the physicians at Oakwood Hospital about

leaving without receiving necessary treatment that he could suffer a "serious

cardiac or neurological condition causing his synocopal episodes and that he needs

to be admitted to the hospital for further evaluation."  (*Id*. at 842).  The court notes

that these are just two additional examples of the medical records in the over 288

pages that plaintiff presented for the ALJ to consider.

The Commissioner's argument that the ALJ "implicitly" found that the

additional evidence was insufficient to disturb Dr. Khalid's prior equivalence

determination is equally unpersuasive as it appears to be a post hoc justification

rather than a reasonable conclusion that can be drawn from the decision itself.

The ALJ's decision, explicitly addresses the limitation of Dr. Khalid's opinion relating to plaintiff's RFC based on subsequently obtained medical evidence.  Yet, the decision does not even allude to the impact, if any, of the later-obtained evidence on  Dr. Khalid's equivalence opinion.  The Commissioner's supposition that the ALJ made such a consideration seems speculative at best, and even if true, veers into the category of substituting his own lay opinion for that of a medical expert on the issue of equivalence.

Based on the above, the Court concludes that the over 288 pages of medical records submitted by plaintiff reasonably raises the question as to whether plaintiff medically equals a listing.  Consequently, pursuant to SSR 96-6p, the ALJ was required to either 1) obtain a definitive answer on the issue of medical equivalence from the testifying medical expert; or 2) obtain a medical opinion from a different medical expert.  Accordingly, the court recommends that the ALJ's non-disability finding be reversed, and the matter be remanded for further development of the record.  *See Bowen*, 478 F.3d at 746 ("[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right); *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (noting that Social Security Rulings are binding); *cf. Johnson v. Barnhart*, 66 F. App'x 285, 288-89 (3d Cir. 2003) (determining that the ALJ's decision should be

reversed for failing to consult a medical expert as required by SSR 96-6p); *Diehl v. Barnhart*, 357 F. Supp. 2d 804, 818 (E.D. Pa. 2005) (same); *Maniaci v. Apfel*, 27 F. Supp. 2d 554, 558-59 (E.D. Pa. 1998) (finding the ALJ failed to adequately develop the record when the evidence "fairly raised[d] the question" of whether the claimant met a Listing, yet did not obtain medical expert testimony on the issue); *Honeysucker v. Bowen*, 649 F. Supp. 1155, 1158-60 (N.D. Ill. 1986) (same).

### 2.   *RFC Determination*

A related problem in this case is the ALJ's RFC determination.  There are portions of the RFC, as acknowledged by the Commissioner, that are not based on any medical opinion in the record.  For example, the Commissioner notes that the ALJ did not base her RFC findings regarding plaintiff's ability to lift and carry on any physician's opinion.  Rather, the Commissioner asks the court to imply these findings from the ALJ's conclusion that plaintiff was limited to sedentary work. The ALJ's mental RFC findings suffer from this same issue.  Indeed, the Commissioner asks the court to "implicitly" read limitations into Dr. Newhouse's opinion that he did not explicitly make.  That is an unreasonable conclusion for the ALJ, or this Court to make.   Importantly, this Court has held many times that in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v.*

*Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC

conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at

*10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of

treating physicians, consultative physicians, and medical experts who testify at

hearings are crucial to determining a claimant's RFC because '[i]n making the

residual functional capacity finding, the ALJ may not interpret raw medical data in

functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908,

912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999)

("As a lay person, however, the ALJ was simply not qualified to interpret raw

medical data in functional terms and no medical opinion supported the [RFC]

determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By

independently reviewing and interpreting the laboratory reports, the ALJ

impermissibly substituted his own judgment for that of a physician; an ALJ is not

free to set his own expertise against that of a physician who presents competent

evidence."). While the Commissioner urges the court to adopt the reasoning in

*Rudd v. Commissioner of Social Security*, 531 Fed. App'x 719 (6th Cir. 2013), the

undersigned finds those cases inapposite here. Indeed, in *Rudd*, the Sixth Circuit

determined that the ALJ had not interpreted the raw medical data in functional

terms as plaintiff there had complained. Instead, the record reflected that the ALJ

had requested the testimony of a medical expert to review the medical evidence

pertaining to plaintiff's mental status and limitations. With respect to the

plaintiff's physical limitations, the court determined that the ALJ had likewise not interpreted raw medical data beyond her ability, thus the assistance of a medical expert was not necessary.  However here, with respect to both plaintiff's physical and mental limitations, the ALJ went beyond the rule announced in *Rudd* and attempted to make "implicit" findings, rather than interpret raw medical data that had already been interpreted by a physician.  *See Rudd*, 531 Fed. App'x at 727. For that reason, the undersigned concludes that the ALJ erred.

Although ultimately a finding of no disability may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination because it is not fully supported by a consulting physician or expert medical advisor.  Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on her own independent medical findings.  Under these circumstances, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion regarding plaintiff's physical and mental impairments.  Again, given the need for remand to obtain an expert medical opinion(s) regarding plaintiff's physical and mental impairments, plaintiff's non-severe impairments will necessarily have to be re-evaluated on remand.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and this matter be **REMANDED** for further proceedings consistent with this Report and Recommendation under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local

Rule 72.1(d).  The response must specifically address each issue raised in the

objections, in the same order, and labeled as "Response to Objection No. 1,"

"Response to Objection No. 2," etc.  If the Court determines that any objections

are without merit, it may rule without awaiting the response.

Date: February 23, 2017                     s/Stephanie Dawkins Davis
                                            Stephanie Dawkins Davis
                                            United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on February 23, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                  s/Tammy Hallwood
                                  Case Manager
                                  (810) 341-7887
                                  tammy_hallwood@mied.uscourts.gov